UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
SHARON BENNETT,

                            Plaintiff,                  **ORDER, REPORT AND**
                                                         **RECOMMENDATION**
    -against-                                   16-CV-5816 (ADS)(SIL)

TARGET CORPORATION a/k/a TARGET,

                            Defendant.
-----------------------------------------------------------x

**STEVEN I. LOCKE, United States Magistrate Judge:**

By way of Verified Complaint filed on August 31, 2016 in the Supreme Court of the State of New York, County of Nassau, Plaintiff Sharon Bennett ("Plaintiff" or "Bennett") commenced this action, seeking damages for personal injuries that she allegedly sustained when she tripped and fell on a display platform known as a "base deck" while shopping at a retail store owned and operated by Defendant Target Corporation a/k/a Target ("Defendant" or "Target") located at Green Acres Mall, 500 Sunrise Highway in Valley Stream, New York. *See* Verified Complaint (the "Complaint" or "Compl."), Docket Entry ("DE") [1-2], ¶¶ 5, 25. The case was subsequently removed to the United States District Court for the Eastern District of New York on the basis of the Court's diversity jurisdiction. *See* DE [1]. Plaintiff alleges that Defendant's negligence—namely, its failure to warn, its creation of a defective design and/or layout, and its failure to properly inspect the area in question—caused the incident, and that she sustained serious personal injuries as a result. *See* Compl. ¶¶ 29, 76.

Presently before the Court are: (i) Defendant's motion for an Order precluding the report and testimony of Plaintiff's architectural expert, Jerry Birnbach ("Birnbach"), and striking Bennett's Local Rule 56.1 statement, DE [41]; (ii) Target's letter motion to stay Birnbach's deposition and the deadline to disclose rebuttal experts, DE [43]; and (iii) Plaintiff's motion precluding the report and testimony of Defendant's industrial engineering expert, Howard Ehrlich ("Ehrlich"), DE [56]. For the reasons set forth herein, the Court respectfully recommends to the Honorable Arthur D. Spatt that Target's motion to preclude and to strike be granted in part and denied in part, and that Plaintiff's motion to preclude be denied in its entirety. Further, given that Birnbach's deposition has apparently proceeded, *see* Affidavit in Opposition to Plaintiff's Motion to Preclude Expert Testimony ("Collins Aff."), DE [58], Ex. D at 5, and Target has disclosed its rebuttal expert, the motion to stay is denied as moot.[1]

---

[1] In an abundance of caution, the Court issues the portion of this decision addressing the parties' respective motions to preclude expert testimony on a Report and Recommendation basis even though such motions are typically considered non-dispositive. *See Seena Int'l, Inc. v. One Step Up, Ltd.*, No. 15-cv-01095, 2016 WL 2865350, at *10 n.15 (S.D.N.Y. May 11, 2016) (collecting cases). Plaintiff here has asserted a claim for defective design, which, under New York law, requires expert testimony to proceed. *See Sorto-Romero v. Delta Int'l Mach. Corp.*, No. 05-cv-5172, 2007 WL 2816191, at *10 (E.D.N.Y. Sept. 24, 2007). Thus, a decision altogether precluding the expert testimony relied upon by Bennett would necessarily be dispositive in nature. *See Hilaire v. DeWalt Indus. Tool Co.*, 54 F. Supp. 3d 223, 229 n.3 (E.D.N.Y. 2014). And given that both Target's motion to strike and Plaintiff's motion to preclude are closely related to Defendant's motion to preclude, the Court addresses each motion in the same manner. *See Zhao v. Kaleida Health*, No. 04-cv-467, 2008 WL 346205, at *1 (W.D.N.Y. Feb. 7, 2008). Nevertheless, Target's motion to stay expert discovery is a pretrial matter plainly within the scope of this Court's authority pursuant to 28 U.S.C. § 636(b)(1)(A) and, therefore, the Court styles its ruling on that application as an Order.

## I. BACKGROUND

As noted above, Plaintiff initially filed suit against Target in the New York Supreme Court on August 31, 2016. *See* Compl. According to the Complaint, on April 29, 2016, while Bennett was shopping at Defendant's retail store located at Green Acres Mall in Valley Stream, she tripped and fell upon an approximately six- to twelve-inch elevated display platform in the store's Baby Department. *See id.* ¶ 25. The Complaint further alleges that: (i) the display was defective and negligently placed; (ii) Target failed to conduct reasonable inspections of the subject premises; and (iii) Defendant failed to warn Plaintiff of the defective and dangerous condition. *See id.* ¶¶ 26, 29, 30.

Defendant removed the matter to this Court on October 18, 2016 and interposed an Answer to the Complaint on October 26, 2016. *See* DEs [1], [4]. This Court entered a Scheduling Order on December 6, 2016, and the parties thereafter proceeded with discovery. *See* DE [13]. Bennett was deposed on September 12, 2017. *See* Affidavit of Daniel R. Strecker in Support ("Strecker Aff."), DE [41-1], ¶ 9. On September 21, 2017, Target employees Mariana Puglia ("Puglia") and Deborah Joseph testified at depositions on the company's behalf. *See id.* ¶¶ 10, 11.

By letter dated September 28, 2017, Plaintiff moved for an extension of the September 29, 2017 deadline to serve her expert witness disclosure on the basis that Defendant failed to identify documents called "Plan-o-grams," "visual agencies [*sic*]," and "POGS" (collectively, "Plan-O-Grams")—materials that explicitly direct individual stores how to design and lay out their merchandise—until Puglia's

deposition on September 21, 2017, and that Bennett's expert would need to review and evaluate these documents to render an opinion. *See* DE [27]. Notwithstanding Target's opposition to Plaintiff's request, *see* DE [28], on October 30, 2017, this Court, *inter alia*, extended Bennett's expert disclosure deadline to January 15, 2018 and ordered Defendant to produce the materials sought. *See* DE [32].[2]

### A. **Birnbach and His Report**

On January 5, 2018, Bennett timely served her expert disclosure identifying Birnbach, an architectural and design expert, as her intended expert witness together with Birnbach's resume and report dated January 2, 2018. *See* Strecker Aff. ¶ 13; *id.*, Exhibits ("Exs.") G, H; Opposition to Defendant's Motion to Preclude Expert Testimony and to Strike Plaintiff's Rule 56.1 Statement ("Pl.'s Opp."), ¶ 12. According to Birnbach's resume, he received a Bachelor of Science degree in Architectural Technology from New York Institute of Technology in 1970. *See* Strecker Aff., Ex. G. Since that time, Birnbach has consistently been employed in the store design and display industry. *See id.*; Pl.'s Opp. ¶ 15. Birnbach currently serves as the Chief Executive Officer of the retail design firm RDD Associates Inc., in which capacity he is responsible for all store and display design, detailing, manufacturing coordination, client relations, and new business. *See* Strecker Aff., Ex. G; Pl.'s Opp. ¶ 16. Birnbach has received various awards for his work in retail design, spoken at numerous

---

[2] Defendant filed objections to this Court's October 30, 2017 ruling pursuant to Fed. R. Civ. P. 72(a) on November 6, 2017. *See* DE [34]. On February 28, 2018, Judge Spatt issued a Memorandum of Decision & Order affirming this Court's ruling in its entirety. *See* DE [40].

industry events, and served as an expert witness in approximately 150 cases involving store/retail design and layout. *See* Pl.'s Opp. ¶¶ 13, 14, 18.

Prior to preparing his report, Birnbach reviewed and relied upon, among other materials, the Plan-O-Grams provided by Target in response to this Court's October 30, 2017 Order. *See* Strecker Aff., Ex. H at 1; Pl.'s Opp. ¶ 20. Birnbach opines in his report that Plaintiff's actions on the date in question were reasonable and foreseeable and that Defendant's layout with respect to the base deck constituted a defective design. *See* Strecker Aff., Ex. H at 2; Pl.'s Opp. ¶ 22. Birnbach also concludes that Target was negligent in creating this condition, failing to conform to the Plan-O-Grams, and failing to warn customers of a defective/hazardous/dangerous condition that foreseeably would lead to a customer sustaining injury. *See* Strecker Aff., Ex. H at 2. Birnbach further opines that, in the absence of empty space on the base deck, Plaintiff's fall would have been broken, which, in turn, would have prevented or minimized her injuries. *See id.* at 4-5. In addition, Birnbach concludes that the fall caused Bennett to break her metatarsal. *See id.* at 3.

### B. Plaintiff's Local Rule 56.1 Statement

On February 13, 2018, Plaintiff served her Local Rule 56.1 statement, *see* Strecker Aff. ¶ 16; *id.*, Ex. I, which sets forth the following facts, among others: (i) Plaintiff was shopping in an aisle with infant/toddler items located on shelves to her left and a raised platform, known as a base deck, displaying furniture to her right, *id.* ¶ 2; (ii) the base deck was characterized by a large, open void/space between a dresser and crib that were displayed on the base deck, *id.* ¶ 6; (iii) Target's corporate

office provides each store with Plan-O-Grams that dictate how each aisle shall be configured and how the items in each aisle are to be displayed, *id.* ¶ 8; (iv) the open space between the dresser and crib on the base deck did not comply with Defendant's Plan-O-Gram, industry standards, or Occupational Safety and Health Administration's ("OSHA") standards for safety and compliance, *id.* ¶¶ 9, 10; (v) Target knew that shoppers would be likely to step upon the base deck but did not utilize signage warning them to refrain from doing so, *id.* ¶¶ 15, 16; (vi) it was foreseeable that a shopper would, as Plaintiff did, take one step back to expand her sightline to fully view the items on display and hit her foot on the base deck in the same aisle, *id.* ¶ 18; and (vii) Bennett's injuries were the direct result of the accident, which was caused by Defendant's failure to comply with OSHA regulations, industry standards, and its Plan-O-Grams, *id.* ¶ 21. Plaintiff's Local Rule 56.1 statement cites and relies upon Birnbach's report in 13 of its 21 paragraphs. *See generally id.*

C. **Defendant's Motions**

1. Motion to Preclude and to Strike

On March 1, 2018, Target filed its motion to preclude Birnbach's report and testimony and to strike Plaintiff's Local Rule 56.1 statement. *See* DE [41]. In support of that motion, Defendant argues that Birnbach is not qualified to render the opinions set forth in his report. *See* Memorandum of Law in Support of Motion to Preclude Expert and Strike 56.1 Statement ("Def.'s Mem."), DE [41-12], at 1. Further, Target contends, for a variety of reasons, that such opinions are unreliable and will not assist the trier of fact. Defendant also asserts that Bennett's Local Rule 56.1 statement

should be stricken because it relies heavily on Birnbach's inadmissible report, contains improper argument and conclusions, and makes assertions unsupported or contradicted by the cited evidence. *See id.* at 1-2. Bennett argues in opposition that Birnbach's testimony and report should not be precluded because Birnbach is a qualified expert with reliable opinions based upon over four decades of experience in the retail design and safety field and a thorough review of all relevant materials. *See* Plaintiff Sharon Bennett's Memorandum of Law in Opposition, DE [44-12], at 2. Moreover, Plaintiff contends that her Local Rule 56.1 statement should not be stricken because it accurately reflects the testimony of all witnesses and documentary evidence in this matter. *See id.* at 3.

### 2. Motion to Stay

On March 2, 2018, Target moved by letter for a stay of both Birnbach's deposition and the deadline to disclose its rebuttal experts, pending the outcome of its motion to preclude and to strike. *See* DE [43]. Plaintiff opposed that application on March 6, 2018. *See* DE [46].

### D. **The Ehrlich Report**

On or about April 16, 2018, Defendant served an expert disclosure identifying Ehrlich as its rebuttal expert and attaching Ehrlich's resume and report. *See* Affidavit of Jenna DiCostanzo in Support, DE [56-1], ¶ 17; Collins Aff., Ex. D. Ehrlich's resume indicates that he received a Bachelor of Science degree in Engineering from Western Michigan University in 1978. *See* Collins Aff., Ex. D at 35. Professionally, Ehrlich has held various industrial engineering and management

positions since 1978. *See id.* at 34-35. From 1996 on, Ehrlich has been employed by W.O. Thomas and Company, Inc., where his responsibilities include "new product development, warnings and safety instructions, managing projects, and implementing improvements in various manufacturing environments." *Id.* at 34. According to Ehrlich's report, he has "worked as a design draftsman and ha[s] designed gondola displays and platform displays for department stores such as the gondola and platform display involved in this matter . . ." and, consequently, he is familiar with the safety requirements for such equipment. *Id.* at 8. Ehrlich is also an associate at Robson Forensic, Inc., in which capacity he provides technical investigations, analyses, reports, and testimony in connection with various litigations. *See id.* He has been qualified in various federal and state courts to testify as an expert at trial. *See* Collins Aff. ¶ 16.

Ehrlich conducted a site inspection of the area in question on April 4, 2018, during which time he took photographs that he included in his report. *See* Collins Aff., Ex. D at 2. In providing his opinion regarding the design of the subject base deck, Ehrlich relies on a methodology called "Hazard Analysis"—also known as "Risk Assessment," "Risk Analysis," and "Safety Analysis"—which he contends is a widely accepted methodology for evaluating design safety. *See id.* at 4. According to Ehrlich, Hazard Analysis "is a review process that seeks to acquire information about equipment, products or systems to discern those conditions or circumstances that may lead to an unfavorable outcome" and a "means by which safety can be evaluated after the design process is complete." *Id.* Ehrlich also identifies "[g]uidelines for

platform displays [that] have been long known in the retail industry," *id.* at 5, namely, those set forth in the publication entitled *Loss Control: A Safety Guidebook for Trades and Services* authored by George and Helen Matews, *see id.* Applying those standards to the facts of this case, Ehrlich concludes that Target was in full compliance with industry guidelines. *See id.* Ehrlich further asserts that the subject base deck was not defective in the manner Birnbach opines. *See id.* at 6. In addition, Ehrlich contends—based upon Birnbach's failure to either conduct an inspection, take measurements, or take field notes, as well as his reliance on inaccurate dimensions—that Birnbach's analysis and opinions are "not the product of reliable principles and methods nor do they comport with the facts of the case." *Id.* at 9. Finally, Ehrlich highlights that Birnbach lacks biomechanical or other credentials that qualify him to analyze Plaintiff's fall and how it might have been prevented. *See id.* at 17.

E. **Plaintiff's Motion**

On May 30, 2018, Bennett moved for an order precluding the opinion and testimony of Ehrlich. *See* DE [56]. Initially, Plaintiff contends that Target should be precluded from utilizing Ehrlich and his report because he lacks adequate qualifications. More specifically, Bennett asserts that, as an industrial engineer, Ehrlich "lacks the expertise, experience and/or specialized knowledge in the field of retail design and safety necessary for this . . . Court to deem his report and testimony admissible." Memorandum of Law ("Pl.'s Mem."), DE [56-2], at 4. In addition, Plaintiff argues that Ehrlich's opinions concerning the mechanics of the subject fall

and the possibility of fall prevention are unreliable because he lacks credentials in either biomechanics, anatomy, or medicine. *See id.* at 6. Further, Bennett claims that Ehrlich's opinions are based on flawed methodology because they rely largely upon an inspection that was conducted approximately two years after the incident, by which time the condition of the area in question had changed. *See id.* at 7-8.

In opposition, Target defends Ehrlich's qualifications by highlighting the statement in his report that he has "worked as a design draftsman and . . . designed gondola displays and platform display[s] involved in this matter and . . . [is] familiar with the safety requirements for such equipment." Memorandum of Law in Opposition to Plaintiff's Motion to Preclude Expert ("Def.'s Opp. Mem."), DE [59], at 3. Defendant also asserts that Ehrlich's opinions are reliable because they do not purport to discuss the biomechanics of Plaintiff's accident, but rather suggest that the cause the fall was Bennett's failure to turn around and observe her surroundings while walking backward. *See id.* at 6-7. Finally, Target contends that Ehrlich's methodology was not flawed, as the information he relied upon in rendering his decision is consistent with all other record evidence. *See id.* at 7-11.

## II. LEGAL STANDARDS

The Supreme Court has held that the admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides that:

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the

> witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702; *see Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149, 119 S. Ct. 1167, 1175 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590, 113 S. Ct. 2786, 2795 (1993); *see also Lara v. Delta Int'l Mach. Corp.*, No. 13-cv-6259, 2016 WL 1254023, at *5 (E.D.N.Y. Mar. 31, 2016) (explaining the applicable standards). As the Second Circuit has observed, "Rule 702 embodies a liberal standard of admissibility for expert opinions . . . ." *Nimely v. City of New York*, 414 F.3d 381, 395 (2d Cir. 2005). Nevertheless, under *Daubert* and its progeny, courts maintain "a 'gatekeeping responsibility' of 'ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Rodriguez v. British Airways PLC*, No. 17-cv-03691, 2017 WL 6372733, at *3 (E.D.N.Y. Dec. 12, 2017) (quoting *Daubert*, 509 U.S. at 597, 113 S. Ct. at 2799). In evaluating whether to admit expert testimony, the trial court must consider whether: (i) the witness is qualified as an expert on the topic at issue; (ii) the expert's opinion is based on reliable data and methodology; and (iii) the expert's opinion will assist the trier of fact. *Nimely*, 414 F.3d at 396-97. "The proponent of the expert testimony has the burden of establishing, by a preponderance of the evidence, that the testimony is competent, relevant, and reliable." *SourceOne Dental, Inc. v. Patterson Companies, Inc.*, No. 15-cv-5440, 2018 WL 2172667, at *1 (E.D.N.Y. May 10, 2018). Ultimately, the question of admissibility is left to the sound discretion of the trial court. *Lara*, 2016 WL 1254023, at *5.

"In analyzing an expert's qualifications, the court should: (1) examine the background of the witness to determine if he or she possesses any of the qualifications set forth in Rule 702; and (2) compare the witness' education or area of expertise with the subject matter of the proffered expert testimony." *Pearlman v. Cablevision Sys. Corp.*, No. 10-cv-4992, 2015 WL 9462104, at *8 (E.D.N.Y. Dec. 28, 2015) (citation omitted). Courts should look to the totality of the witness's qualifications when making this assessment. *Hollman v. Taser Int'l Inc.*, 928 F. Supp. 2d 657, 667 (E.D.N.Y. 2013); *Fate v. Vill. of Spring Valley*, No. 11-cv-6838, 2013 WL 2649548, at *1 (S.D.N.Y. June 13, 2013). To that end, "[i]t is well-settled that an expert's opinions may be properly based on personal experience rather than traditional scientific methods." *Stern v. Shammas*, No. 12-cv-5210, 2015 WL 4530473, at *3 (E.D.N.Y. July 27, 2015); *see Pearlman*, 2015 WL 9462104, at *8 ("Expert qualification is appropriate on the sole basis of 'practical experience' and a formal degree is not required." (quoting *Argonaut Ins. Co. v. Samsung Heavy Indus. Co. Ltd.*, 929 F. Supp. 2d 159, 172 (N.D.N.Y. 2013))); *In re Mirena IUD Prod. Liab. Litig.*, 169 F. Supp. 3d 396, 412 (S.D.N.Y. 2016) ("Qualification may be based on a broad range of knowledge, skills, and training." (citation and internal quotation marks omitted)).

With respect to reliability, the court should consider whether the expert's opinion: (i) is grounded in sufficient facts or data; (ii) is the product of reliable principles and methods; and (iii) indicates that the witness has applied the relevant principles and methods reliably to the facts of the case. *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007); *see also Stern*, 2015 WL 4530473, at *2 (observing

that the court must inquire as to whether the expert opinion "is based upon reliable data and methodology"); *Vasquez v. City of New York*, No. 10 Civ. 6277, 2014 WL 4388497, at *12 (S.D.N.Y. Sept. 5, 2014) ("[T]he trial judge [has] the task of ensuring that an expert's testimony . . . rests on a reliable foundation . . . ."). The court's duty is to make a "preliminary assessment" as to whether the reasoning or methodology supporting the testimony at issue is scientifically valid and properly applied. *Daubert*, 509 U.S. at 592-94, 113 S. Ct. at 2796-97; *Lara*, 2016 WL 1254023, at *8. Factors to consider include the ability to test the expert's methods and reasoning, whether the expert's theory has been subject to peer review and publication, the potential rate of error, and general acceptance in the scientific community. *Daubert*, 509 U.S. at 592-94, 113 S. Ct. at 2796-97; *Lara*, 2016 WL 1254023, at *8 (citations omitted). These factors, however, are not a "definitive checklist," as the standard is flexible and the inquiry must suit the nature of the case. *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002); *Lara*, 2016 WL 1254023, at *8 (collecting cases).

If the expert is qualified, and his or her opinion is sufficiently reliable, the court must then consider whether the testimony at issue will assist the trier of fact. *Amorgianos*, 303 F.3d at 266 (citing *Campbell v. Metro. Prop. & Cas. Ins. Co.*, 239 F.3d 179, 184 (2d Cir. 2001)). "This requirement can be expressed as a question of 'fit'—whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Pearlman*, 2015 WL 9462104, at *7 (citation and internal quotation marks omitted). By contrast, expert

testimony is not useful "if it merely usurps[ ] either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it." *Id.*

## III. DISCUSSION

Applying the standards outlined above, and for the reasons set forth below, the Court respectfully recommends that Target's motion to preclude and to strike be granted in part and denied in part, and that Plaintiff's motion to preclude be denied.

### A. **Defendant's Motion to Preclude Birnbach's Report and Testimony and to Strike Plaintiff's Local Rule 56.1 Statement**

#### 1. Qualifications

Target argues that Birnbach lacks adequate qualifications to opine on biomechanical, anatomical, and medical issues. *See* Def.'s Mem. at 4. In particular, Defendant challenges Birnbach's conclusions that: (i) the incident at issue caused Bennett's broken metatarsal; (ii) in the absence of empty space on the base deck, Plaintiff's fall would have been broken; and (iii) if Bennett's fall would have been broken, it would have prevented or minimized her injuries. *See id.* (citing Strecker Aff., Ex. H at 3, 4-5, 7). Plaintiff also takes issue with various "assumptions" made by Birnbach regarding the length of the human arm and stride. *See id.* (citing Strecker Aff., Ex. H at 9-10, Addendum, figures 7-9).

As an initial matter, the Court finds Birnbach sufficiently qualified to serve as a retail design and safety expert. As Birnbach's resume demonstrates, he has been employed in the field of retail design and safety throughout his entire career, previously served as a retail design and safety expert witness in numerous cases,

received industry and trade awards, and served on various boards for retail design and safety organizations. *See* Strecker Aff., Ex. G at 17-19. Birnbach therefore possesses adequate knowledge, skill, and experience in this area. Further, Birnbach's report largely addresses the question of whether Target's design of the area in question was negligent or defective, an issue central to Plaintiff's claims in this matter. Birnbach's opinions concerning the cause of Bennett's fall—including those involving issues that Defendant suggests are "biomechanical" in nature—are plainly within his area of expertise, particularly considering his personal experience in the industry. Correspondingly, Birnbach is qualified to testify regarding what design-related decisions could have prevented or minimized Plaintiff's injuries. The Court does not conclude at this juncture, however, that Birnbach is qualified to render opinions concerning the specific cause of Bennett's injuries. Challenges to Birnbach's qualifications in this regard would be more properly raised with Judge Spatt at the time of trial or made on cross-examination.[3]

2. Reliability

Next, Defendant disputes the reliability of: (i) Birnbach's claim that the configuration of the display at the time of the subject incident violated Target's Plan-O-Grams; (ii) Birnbach's claim that usable space on the display was insufficient for the merchandise thereon; (iii) Birnbach's claim that the display violated industry standards. *See* Def.'s Mem. at 5-10. According to Target, Birnbach's conclusions drawn from his review of the Plan-O-Grams are based on conjecture about what that

---

[3] The Court addresses Defendant's argument concerning Birnbach's various biological "assumptions" in the section III(A)(2), *infra*.

document dictates and how it applies. *See id.* at 6. This Court disagrees. As Plaintiff notes, the Plan-O-Grams reviewed and described by Birnbach in his report were provided by Defendant in response to a discovery demand seeking design-related materials pertaining to the aisle where the subject incident occurred. *See* Pl.'s Opp. ¶ 21; *see also* DEs [27], [32]. Thus, in reaching the conclusion that the configuration of the base deck and merchandise deviated from its own company standards, which created a space between a crib and a dresser, Birnbach properly relied upon, and made reasonable assumptions with respect to, these documents. For similar reasons, Birnbach appropriately utilized the measurements of the base deck drawn from the Plan-O-Grams. Any challenges to such measurements or other conclusions reached based on Birnbach's analysis of the Plan-O-Grams go to the weight of Birnbach's testimony, not its admissibility, and may be raised on cross-examination. *See Sprayregen v. A. Gugliotta Dev., Inc.*, 166 F. Supp. 3d 291, 301 (E.D.N.Y. 2016); *Daubert*, 509 U.S. at 596, 113 S.Ct. at 2798 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

Target also contests the reliability of Birnbach's claim that the subject display violated industry standards, asserting that Birnbach cites insufficient specific authority in support of his assertion. *See* Def.'s Mem. at 7. According to Defendant, Birnbach identifies only OSHA regulations and excerpts purportedly from manuals utilized by Wal-Mart, the Smithsonian Museum, and WinCo, to establish that the empty space on the base deck constituted a tripping hazard and that it was

reasonably foreseeable that a customer would trip or fall if the platform remained in that condition. *See id.* at 7-10; Strecker Aff. ¶¶ 31-36. Particularly given his extensive experience in the retail design and safety industry, having worked at various firms and served numerous retail clients, the Court deems the industry standards described by Birnbach sufficiently reliable for purposes of the instant motion. *Accord Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 691 F. Supp. 2d 448, 473 (S.D.N.Y. 2010) ("[A]n expert will generally have more in-depth knowledge of industry standards if he or she has worked at more than one firm."). Though Birnbach provides no direct authority for the proposition that OSHA regulations apply to the instant case, which involves a consumer in the retail setting, the Court concludes that regulations pertaining to workplace safety are sufficiently analogous to serve, at least in part, as a basis for Birnbach's conclusions here.[4] Birnbach's citation to manuals utilized by other entities, in conjunction with his personal experience and Target's internal policies, is likewise proper. Indeed, contrary to Defendant's contention, *see* Def.'s Mem. at 9, Birnbach need not cite to guidelines from an industry association itself to establish an industry standard. *See, e.g.*, *Pension Comm. of Univ. of Montreal*, 691 F. Supp. 2d at 473-74.[5] As this Court

---

[4] Notably, Birnbach's assertions regarding violations of OSHA regulations do not speak to any ultimate legal issues to be decided in this case. Birnbach instead relies on such authority to establish Target's non-compliance with industry standards. Accordingly, Defendant's argument that Birnbach's findings premised on OSHA regulations constitute improper legal conclusions is unavailing.

[5] Bennett's reliance on *Grdinich v. Bradlees* is misplaced because, in that case, the expert witness in question had "limited professional experience in the field of merchandise safety display" and the court found that no relevant industry standards existed. *See* 187 F.R.D. 77, 78 & 81-82 (S.D.N.Y. 1999). Here, however, Birnbach's professional experience working in the design and safety industry for various retail clients qualifies him to independently, and reliably, opine on industry standards with respect to product displays, and the Court is satisfied that such standards may exist.

has noted above with respect to the Plan-O-Grams, any alleged deficiencies in Birnbach's methodology for ascertaining industry standards may be raised on cross-examination. *See Reach Music Pub., Inc. v. Warner Chappell Music, Inc.*, 988 F. Supp. 2d 395, 405 (S.D.N.Y. 2013).

As a final challenge to the reliability of Birnbach's opinions, Defendant argues that Birnbach's assumptions about average human arm and stride length lack any explanation. *See* Def.'s Mem. at 10. In his report, however, Birnbach utilizes a diagram from a consultancy firm "specializing in Human Performance Engineering—the application of psychological, physiological and engineering principles to optimise [*sic*] the efficiency and safety of human tasks," to arrive at his conclusion regarding average arm length. *See* Strecker Aff., Ex. H, Addendum, figure 5. Further, Birnbach identifies reports from the University of Oklahoma Health Sciences Center and the American College of Sports Medicine from which he ascertained average stride length. *See id.*, figures 7-9. Accordingly, Target's contention that Birnbach fails to articulate how he arrived at these figures is inaccurate and, even if it were true, would not warrant an order precluding his testimony. *See Ridgeway v. Royal Bank of Scotland Grp.*, No. 3:11-cv-976, 2013 WL 1985016, at *12 n.7 (D. Conn. May 13, 2013) ("[I]t is well established that 'as long as expert's assumptions are not so unrealistic and contradictory as to suggest bad faith,' arguments that the 'assumptions are unfounded go to the weight, not the admissibility, of the testimony.'" (quoting *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996))). Based

on the foregoing, the Court rejects Target's contention that Birnbach's opinions would unduly mislead the jury.

### 3. Ability to Assist the Trier of Fact

Finally, Defendant argues that Birnbach's opinions should be precluded because his report contains improper legal conclusions, lay opinions, and facts that contradict record evidence and, as such, will not assist the trier of fact. *See* Def.'s Mem. at 10-15.

The Second Circuit "is in accord with other circuits in requiring exclusion of expert testimony that expresses a legal conclusion." *Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992); *see Breezy Point Co-op., Inc. v. Cigna Prop. & Cas. Co.*, 868 F. Supp. 33, 36 (E.D.N.Y. 1994) ("The function of informing the jury of the applicable law is reserved strictly for the court."); *246 Sears Rd. Realty Corp. v. Exxon Mobil Corp.*, No. 09-cv-889, 2011 WL 13254283, at *6 (E.D.N.Y. Apr. 1, 2011) ("[T]he rule prohibiting experts from providing their legal opinions or conclusions is 'so well established that it is often deemed a basic premise or assumption of the evidence law—a kind of axiomatic principle'" (quoting *In re Initial Pub. Offering Sec. Litig.*, 174 F.Supp.2d 61, 64 (S.D.N.Y. 2001))); *but see Ebbert v. Nassau Cty.*, No. 05-cv-5445, 2008 WL 4443238, at *12 (E.D.N.Y. Sept. 26, 2008) ("[F]actual conclusions may be included in an expert's testimony, even though those conclusions may embrace an ultimate issue to be decided by the jury." (citing *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991))). Expert testimony is likewise inadmissible when it either: (i) addresses "lay matters which a jury is capable of understanding and deciding

without the expert's help[,]" *Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989); or (ii) contradicts undisputed record evidence, *see Barrett v. Black & Decker (U.S.) Inc.*, No. 06-cv-1970, 2008 WL 5170200, at *8 (S.D.N.Y. Dec. 9, 2008).

Here, the Court agrees with Target that Birnbach's report contains numerous inadmissible conclusions of law. By way of example, Birnbach opines that "Target was negligent in creating a nuisance, hazard, trap, defective design, dangerous condition and/or defective display[;] [and] fail[ing] to warn customers of an impending hazard . . . ." Strecker Aff., Ex. H at 2-3. In addition, he concludes that the subject display was "defectively design[ed]" and that Target's negligent decisions in this regard "proximately caused [Plaintiff] to trip/fall and sustain injuries . . . ." *Id.* at 4. Such statements, among others in Birnbach's report, "usurp [both] the role of the trial judge in instructing the jury as to the applicable law [and] the role of the jury in applying that law to the facts before it," *United States v. Lumpkin*, 192 F.3d 280, 289 (2d Cir.1999), and are thus inadmissible. *See Hygh*, 961 F.2d at 363. Nevertheless, as articulated above, Birnbach's report also contains numerous factual assertions and conclusions founded primarily upon his experience in the retail safety and design industry. *See, e.g.*, Strecker Aff., Ex. H at 5 ("The condition was caused by Target's failure to comply with its own standard company-issued Planogram that assigned a crib, in a parallel to aisle position, to that space on the platform."); *id.* at 6 ("[W]ritten signage notice including but not limited to 'watch your step,' 'danger,' [or] 'caution' should have been positioned prominently by Target along the platform warning customers not to step up onto the platform and/or to avoid the tripping hazard."); *id.*

("What was unconventional was the fact that a shelf was dictated to be placed above the stacked area leaving no vertical space to lift and pull out."); *id.* at 7 ("Target's layout and display, and subsequent floor sweep and inspection of [the] [i]nfants area, allowed product to hang over the display line which . . . created a foreseeable need for a reasonable customer to step back towards the base deck to manipulate, lift and/or visualize the items sold on the rack parallel [to] the base deck[,] . . ."). These opinions could indeed assist the trier of fact in evaluating the central issue in this case, namely, whether Target's design of either the base deck, display, or aisle in question was defective. Accordingly, the Court finds no basis to preclude these opinions or any other strictly factual conclusions in Birnbach's report.[6]

Based on the foregoing analysis, the Court respectfully recommends that Target's motion to preclude the testimony and report of Birnbach be granted in part and denied in part. Specifically, the Court recommends that the motion be granted only insofar as Birnbach is precluded from reaching any ultimate conclusions of law, but that it otherwise be denied. Further, the Court recommends that Defendant's application to preclude Birnbach's opinions concerning the specific cause of Bennett's injuries be denied without prejudice and with leave to renew.

---

[6] Defendant's alternative relevance-based arguments for preclusion of Birnbach's report and testimony are unfounded. Birnbach's opinions concerning whether the base deck was safe, and whether Target should have warned customers, were both informed, at least to some degree, by his expertise in the retail design and safety field, and could certainly assist a finder of fact in understanding conventions in the industry. Further, Defendant identifies no undisputed factual evidence that contradicts any of Birnbach's assertions.

### 4. Motion to Strike

"A party seeking to strike a Rule 56.1 statement bears a heavy burden, as courts generally disfavor motions to strike." *Christians of California, Inc. v. Clive Christian New York, LLP*, No. 13-cv-275, 2014 WL 3407108, at *2 (S.D.N.Y. July 7, 2014) (citation and internal quotation marks omitted). "Whether to grant or deny a motion to strike is vested in the trial court's sound discretion." *Peters v. Molloy Coll. of Rockville Ctr.*, No. 07-cv-2553, 2010 WL 3170528, at *1 (E.D.N.Y. Aug. 10, 2010) (citation and internal quotation marks omitted). Here, in light of the foregoing determinations regarding the admissibility of Birnbach's opinions, the Court finds no basis to strike Plaintiff's Local Rule 56.1 statement in its entirety. To the extent, however, that Target seeks to challenge any specific assertions of fact contained therein on admissibility grounds, or otherwise, such arguments are more appropriately raised and addressed in the summary judgment context. *See Ross Univ. Sch. of Med., Ltd. v. Brooklyn–Queens Health Care, Inc.*, No. 09-cv-1410, 2012 WL 6091570, at *6 (E.D.N.Y. Dec. 7, 2012) ("[C]ourts in this Circuit frequently deny motions to strike . . . Rule 56.1 statements, and simply disregard any improper assertions."), *report and recommendation adopted in relevant part*, No. 09-cv-1410, 2013 WL 1334271 (E.D.N.Y. Mar. 28, 2013); *Pray v. Long Island Bone & Joint, LLP*, No. 14-cv-5386, 2016 WL 9455557, at *5 (E.D.N.Y. Aug. 11, 2016); ("[A] court may simply disregard the allegations that are not properly supported." (citation and internal quotation marks omitted)). Accordingly, the Court recommends that Defendant's motion to strike Plaintiff's Local Rule 56.1 Statement be denied.

### B. **Plaintiff's Motion to Preclude Ehrlich's Report and Testimony**

The Court next turns to Plaintiff's motion to preclude the report and testimony of Ehrlich.

### 1. Qualifications

Plaintiff challenges Ehrlich's qualifications on the basis that he lacks the necessary "expertise, experience and/or specialized knowledge in the field of retail design and safety . . . ." Pl.'s Mem. at 4. To that end, Plaintiff asserts that Ehrlich's experience, coursework, organizational memberships, and publications have no relationship to, or bearing upon, the claims at issue in this case. *See id.* at 4-5.

The Court finds Ehrlich sufficiently qualified as an expert to testify on issues relating to retail design and safety. As stated previously, Ehrlich has held various industrial engineering and management positions since 1978, in which capacity he worked on "new product development, warnings and safety instructions, managing projects, and implementing improvements in various manufacturing environments." Collins Aff., Ex. D at 34-35. Most significantly, Ehrlich "worked as a design draftsman and . . . designed gondola displays and platform displays for department stores such as the gondola and platform display involved in this matter . . ." *Id.* at 8. Ehrlich, therefore, possesses the requisite experience to provide an opinion with respect to Bennett's claim that either the base deck, display, or aisle in question was defectively designed.[7] Any challenges to Ehrlich's qualifications are more

---

[7] The Court agrees with Defendant that *Ascher v. Target Corp.*, 522 F.Supp.2d 452 (E.D.N.Y. 2007) is distinguishable. Unlike Ehrlich, the expert-engineer in that case had no training or experience in the retail environment. *See id.* at 459. *Hofmann v. Toys "R" Us--NY Ltd. P'ship* is likewise inapplicable because the expert in that case offered no information establishing "specialized

appropriately raised on cross-examination. *See McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995) ("Disputes as to the strength of [the expert's] credentials . . . go to the weight, not the admissibility, of his testimony.").

### 2. Reliability

Bennett also objects to the reliability of Ehrlich's opinion "as to the mechanics of Plaintiff's fall and the possibility of fall prevention[,]" due to Ehrlich's lack of training or experience "in the field of biomechanics, anatomy or medicine." Pl.'s Mem. at 6. Citing the arguments raised by Target in support of its motion, Bennett submits: "[i]f testimony regarding biomechanics and fall prevention requires specific expertise that renders Mr. Birnbach's opinion invalid, as Mr. Ehrlich has argued in his report . . . , th[e]n Mr. Ehrlich has conceded that he is unqualified to offer his rebuttal opinion . . . ." *Id.* at 6-7. Consistent with the findings above pertaining to Birnbach, the Court concludes that Ehrlich's opinions regarding the cause of the subject accident—specifically, Plaintiff's failure to observe her surroundings while walking backwards—are sufficiently reliable, and that Ehrlich's lack of specific training or experience in biomechanics, anatomy, or medicine provides no basis to preclude his report or testimony on this issue.

Bennett also insists that Erhlich's opinions are based on flawed methodology because, in preparing his report, he relied heavily upon his April 4, 2018 inspection of the location in question as well as photographs that he took during that time. *See* Pl.'s Mem. at 7. According to Plaintiff, Ehrlich may not draw the conclusions that the

knowledge, experience, training, or education with regard to consumer shelving, package retrieval, or customer safety . . . ." 272 A.D.2d 296, 296, 707 N.Y.S.2d 641, 642 (2000).

subject platform complied with applicable industry guidelines and was not defective at the time of the fall based on an inspection that occurred nearly two years later. *See id.* Plaintiff also points out that the display of items in the aisle at issue as reflected in Ehrlich's photographs is different than that in photographs captured the same day as the incident. *See id.* at 8.

Having reviewed the relevant record evidence, the Court concludes that the temporal separation between Bennett's fall and Ehrlich's inspection provides no basis to preclude Ehrlich's report or testimony. As Defendant illustrates, Ehrlich's observations and measurements are substantially similar to all evidence in the record. *Compare* Collins Aff. ¶¶ 12, 13, *with id.*, Ex. D at 1-2. In addition, the methodology utilized by Ehrlich is otherwise sound. Ehrlich reviewed the deposition testimony of Plaintiff and Target's representatives; described the specific methodology he applied in providing his opinion pertaining to the design of the base deck, namely, Hazard Analysis; identified relevant industry guidelines from the apparently reputable publication *Loss Control: A Safety Guidebook for Trades and Services*; and concluded that Defendant was in full compliance with such guidelines on the date of the subject accident. *See id.*, Ex. D at 1-5. Accordingly, the Court rejects Plaintiff's assertion that Ehrlich's methodology is flawed to the degree that his opinions should be precluded.

Based on the foregoing analysis, the Court respectfully recommends that Plaintiff's motion to preclude the testimony and report of Ehrlich be denied.

## IV. CONCLUSION

For the reasons set forth herein, the Court respectfully recommends that Target's motion to preclude and to strike be granted in part and denied in part and that Plaintiff's motion to preclude be denied. Further, given that Birnbach's deposition has apparently proceeded and Target has disclosed its rebuttal expert, the motion to stay is denied as moot.

## V. OBJECTIONS

A copy of this Order, Report and Recommendation is being served on all parties by electronic filing on the date below. Any objections to this Order, Report and Recommendation must be filed with the Clerk of the Court within 14 days of receipt. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72; *Ferrer v. Woliver*, No. 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).


Dated: Central Islip, New York
          November 5, 2018

                                            s/ Steven I. Locke
                                          STEVEN I. LOCKE
                                          United States Magistrate Judge