**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
SHARON BENNETT,

                Plaintiff,          **MEMORANDUM OF**
                                    **DECISION & ORDER**
        -against-               2:16-cv-5816 (ADS) (SIL)

TARGET CORPORATION a/k/a TARGET,

                Defendant.
-----------------------------------------------------------X
<u>**APPEARANCES:**</u>

**Drummond & Squillace, PLLC**
*Attorneys for the Plaintiff*
175-61 Hillside Avenue, Suite 205
Jamaica, NY 11432
        By:    Stephen L. Drummond, Esq.,
               Jenna DiCostanzo, Esq.,
               Joann Squillace, Esq., Of Counsel.

**Simmons Jannace DeLuca, LLP**
*Attorneys for the Defendant*
43 Corporate Drive
Hauppauge, NY 11788
        By:    Sal F. DeLuca, Esq.
               William T. Collins, III, Esq., Of Counsel.


**SPATT, District Judge**:

I.      **BACKGROUND**

      The Plaintiff brought a negligence action in New York State Supreme Court against the

Defendant, following an incident at one of the Defendant's stores in which the Plaintiff sustained

an injury while shopping.  The Defendant removed the action to this Court in August 2016.

      Presently before the Court is the Defendant's Federal Rule of Civil Procedure ("FED. R.

CIV. P.") 56 motion for summary judgment.  Before ruling on that motion, the Court describes

the Plaintiff's injury, as well as a Report and Recommendation that occurred earlier in this

1

action, because it bears on the pending summary judgment motion. For the reasons that follow, the Court grants the motion and dismisses the case.

### A. The Incident at Target

The following facts are taken from the Defendant's FED. R. CIV. P. 56.1 statement. The Plaintiff did not file a FED. R. CIV. P. 56.1 counterstatement, in violation of Local Civil Rule 56.1. Generally, a "plaintiff['s] failure to respond or contest the facts set forth by the defendants in their Rule 56.1 statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed." *Jessamy v. City of New Rochelle*, 292 F. Supp. 2d 498, 504 (S.D.N.Y. 2003) (quoting *NAS Elecs., Inc. v. Trastech Elecs. PTE Ltd.*, 262 F. Supp. 2d 134, 139 (S.D.N.Y. 2003)).

The facts leading to this action concern the infants' department of a Target store located in Valley Stream, New York (the "Store"). The infants' department contains two aisles, separated by a raised platform that runs in between them. The raised platform is called a "base deck." Each of the two aisles is six feet wide, large enough for two shopping carts to pass one another. On one side of each aisle are shelves, and on the other side is the base deck running between them. The floor is tiled, and has a white, beige, or cream color. As to the base deck, it runs the entire length of each aisle; it is nine inches high; five feet wide; has a line of white label stripping running along its outer edge; and is otherwise covered with dark carpeting. Further, nothing protrudes over the edge of the base deck. The Defendant used the base deck to display infant furniture, including, *inter alia*, a white crib and a dark wood dresser at the Store on the day of the Plaintiff's injury.

The base deck had been present at the Store since 2012. The Store has no records of any other parties injuring themselves on the base deck.

On April 29, 2016, the Plaintiff visited the Store, intending to purchase a gift for her niece's baby shower. She walked to the infants' department, proceeding halfway up one of the aisles. At this time, the aisle's shelves were on her left and the base deck was on her right.

Nothing obstructed the Plaintiff's view of the aisle. Prior to her injury, the Plaintiff did not notice the base deck; the furniture on top of it; or the base deck's carpeting. After entering one of the aisles, the Plaintiff faced the shelves and leaned over to remove a "bath item" from one of the lower shelves. As she leaned over, she moved closer to the shelves. The Plaintiff removed the item; stood up; continued facing the shelves; and held her "wristlet" purse in one hand and the item in the other. The Plaintiff remained in this position—standing close to the shelves and facing them, with her back to the base deck—for approximately five minutes.

Without changing her direction, the Plaintiff took one step backward and her foot touched what she believed to be the base deck, between the white crib and the wood dresser, causing her to fall. She could not explain how, in an aisle six feet wide, that she could be close enough to the shelves to remove an item from them, but still make contact with the base deck after taking a single step back.

### B. The Present Action

In August 2016, the Plaintiff, a resident of New York, sued the Defendant in state court. ECF 1-2. She alleged that because of her fall, she sustained "serious and permanent injuries to her left foot, requiring surgery of said foot." *Id.* at 10. She raised claims for negligence based on a defective design, and negligent hiring and supervision. *Id.* at 11–38. She asked for compensatory damages of $6 million, punitive damages of $5 million, and costs. *Id.* at 39. The Defendant, a Minnesota corporation, filed a notice of removal with the Court in August 2016, invoking the Court's diversity jurisdiction. ECF 1.

On January 5, 2018, the Plaintiff submitted an expert disclosure, saying that she intended to call Jerry Birnbach to testify at trial as to the following:

> Mr. Jerry Birnbach F.I.S.P. Assoc. A.I.A. will be called to testify as to all aspects of the record, the pleadings had herein as well as his background, retail design and safety training and expertise, the retail design and safety significance thereof, and will offer his conclusions derived there from. . . . Mr. Birnbach will also testify as to the records, documents and other materials reviewed, the history obtained, and [he] will offer [his] opinion[] as to the diagnosis, prognosis, retail design, design, safety and findings regarding the Plaintiff's claims. [He] will also testify as to the contents of [his] report[] and [he] will offer testimony, including [his] opinions and conclusions beyond the limits of [his] report[] including, but not limited to, [his] general field of practice.

ECF 41-8 at 2–3. The Plaintiff also submitted Birnbach's resume and Birnbach's incident report as to the Plaintiff's accident. *Id.* at 17, 26–32. In the incident report, Birnbach opined that the Plaintiff's actions on the date of the accident were reasonable and foreseeable; that the Defendant's layout with regard to the base deck constituted a defective design that conflicted with the company's documents called "Plan-o-grams," "visual agencies" and "POGS" (collectively, "Plan-O-Grams"), or materials that directed individual stores how to design and lay out their merchandise; that the Defendant's practices also violated Occupational Safety and Health Administration ("OSHA") standards, as well as safety manuals used by similar companies; that the Defendant was negligent in creating this condition that foreseeably would lead to customers injuring themselves; in the absence of the empty space between the furniture on the base deck, the Plaintiff's fall would have been broken and her injuries minimized; and, the fall caused the Plaintiff to break her metatarsal. *See id.* at 26–32.

The Defendant moved to, *inter alia*, preclude the report and deposition testimony of Birnbach. ECF 41. The Defendant argued that Birnbach was unqualified to opine on biomechanical, anatomical, and medical issues. *Id.* It also challenged Birnbach's conclusions that the Plaintiff's accident caused her broken metatarsal; that without empty space on the base

deck, the Plaintiff's fall would have been broken; and, that breaking the Plaintiff's fall would have minimized her injuries. *Id.* The Court referred this motion, along with other pre-trial motions filed by the parties, to United States Magistrate Judge Steven I. Locke for a Report and Recommendation as to whether those motions should be granted.

On November 5, 2018, Judge Locke issued the Report and Recommendation ("R&R"). ECF 60. Ultimately, the R&R recommended denying the motion to preclude Birnbach's testimony in part, and only recommended granting it to prevent Birnbach from reaching any conclusions of law. *Id.* at 21. Judge Locke ruled as follows concerning Birnbach's qualifications:

> As an initial matter, the Court finds Birnbach sufficiently qualified to serve as a retail design and safety expert. As Birnbach's resume demonstrates, he has been employed in the field of retail design and safety throughout his entire career, previously served as a retail design and safety expert witness in numerous cases, received industry and trade awards, and served on various boards for retail design and safety organizations. Birnbach therefore possesses adequate knowledge, skill, and experience in this area. Further, Birnbach's report largely addresses the question of whether Target's design of the area in question was negligent or defective, an issue central to Plaintiff's claims in this matter. Birnbach's opinions concerning the cause of Bennett's fall—including those involving issues that Defendant suggests are "biomechanical" in nature—are plainly within his area of expertise, particularly considering his personal experience in the industry. Correspondingly, Birnbach is qualified to testify regarding what design-related decisions could have prevented or minimized Plaintiff's injuries.

*Id.* at 15. However, Judge Locke did not comment on whether Birnbach was qualified to give an opinion concerning the specific cause of the Plaintiff's injuries. *Id.*

As to Birnbach's reliability, the Judge Locke ruled, *inter alia*, that Birnbach properly relied on the Plan-O-Grams, OSHA standards, and the manuals used by other companies, and that any challenges to Birnbach's analysis went to the weight of his testimony, not its admissibility. *Id.* at 15–19. However, Judge Locke also ruled that Birnbach's report contained numerous inadmissible conclusions of law, among them, that: (1) the Defendant acted

negligently in creating a dangerous condition and failing to warn customers of the impending hazard; and (2) the base deck was defectively designed and that the Defendant's negligent actions proximately caused the Plaintiff to trip, fall, and sustain injuries. *Id.* at 20. Conversely, Judge Locke stated that Birnbach's assertions of fact based on his experience in the retail safety and design industry would be of use to a jury, and he noted that "Defendant identifies no undisputed factual evidence that contradict[ed] any of Birnbach's assertions." *Id.* at 20–21 & n.6.

The Defendant raised no objections to the R&R. The Court then adopted the R&R in its entirety. ECF 63.

The Defendant now moves under FED. R. CIV. P. 56 for summary judgment and to dismiss the complaint in its entirety, and that motion is presently before the Court. ECF 64.

## II.    DISCUSSION

The Defendant raises several arguments in support of its summary judgment motion: (1) that the Plaintiff cannot make out a *prima facie* case that a dangerous condition existed; (2) the Plaintiff's inattention to her surroundings was the sole proximate cause for her accident; (3) the Store's alleged defect was open, obvious, and not inherently dangerous; (4) the Plaintiff cannot establish a *prima facie* case that the Defendant created the condition or had actual or constructive notice of it; (5) the Plaintiff cannot make out a *prima facie* case that her accident was possible, given her claim that she was standing on one side of a six-foot aisle and somehow managed to reach the base deck on the other side after having taken one step back; (6) the Plaintiff also cannot make out a *prima facie* case that the Defendant negligently hired, supervised, or trained its employees; and (7) the Plaintiff should be precluded from using the report of a purported

expert—Jerry Birnbach—because the expert is unqualified, unreliable, and because his testimony will not assist the trier of fact.

The Plaintiff relies on Birnbach in making her substantive claims in the action. Accordingly, the Court rules on this matter of Birnbach's report first, to determine whether it may consider Birnbach's opinions as to those substantive claims. For the reasons that follow, the Court rules that it may consider Birnbach's opinions, to the extent that they do not issue conclusions of law; that in any event, the Plaintiff's claims fail; that the Defendant's summary judgment motion is granted; and, that the action is dismissed.

### A. Legal Standard For Summary Judgment

FED. R. CIV. P. 56(a) provides that a court may grant summary judgment when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

"A genuine issue of fact means that 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Wright v. Goord*, 554 F. 3d 255, 266 (2d Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "Where the moving party demonstrates 'the absence of a genuine issue of material fact,' the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). "The evidence of the party opposing summary judgment is 'to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Wright*, 554 F.3d at 266 (parenthetically quoting *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)). However, to defeat a motion for summary judgment, the opposing party "must do more than simply show that

there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010).

"When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

**B. As to Whether the Court May Consider Birnbach's Opinion**

**1. Legal Standard**

Prior to the Supreme Court's interpretation of FED. R. EVID. 702 in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), the test to determine if scientific evidence was admissible at trial was whether the evidence was "generally accepted" as reliable within the relevant scientific community. *See Frye v. United States*, 293 F.3d 1013 (D.C. Cir. 1923). The *Frye* standard allowed novel scientific evidence to be admitted only if it was based on a generally accepted method or theory. *Frye*, 293 F.3d 1014. *Daubert*, however, held that the *Frye* test was superseded by the adoption of the Federal Rules of Evidence ("FED. R. EVID."), which included a liberal relevance standard. FED. R. EVID. 401 states that evidence is relevant if it has any tendency to make the existence of any fact of consequence to the action more or less probable. FED. R. EVID. 401.

FED. R. EVID. 702, entitled "Testimony by Experts," states that: "[i]f . . . scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue," "a witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

FED. R. EVID. 702. Examining FED. R. EVID. 702, *Daubert* provides a flexible analysis to guide trial courts in determining whether proffered submissions of scientific evidence are admissible. The Supreme Court emphasized the "flexibility" that should guide the trial court when making a determination of the admissibility of scientific evidence and stressed that "[v]igorous cross-examination, presentation of contrary evidence, and a careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 595, 113 S. Ct. 2786 (internal citations omitted); *but cf. Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002) ("A minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method will not render an expert's opinion per se inadmissible. 'The judge should only exclude the evidence if the flaw is large enough that the expert lacks good grounds for his or her conclusions.'" (quoting *IN re Paoli R.R Yard PCB Litig.*, 35 F.3d 717, 746 (3d Cir. 1994)).

When faced with the prospect of expert testimony:

> The trial judge must determine at the outset, pursuant to [FED. R. EVID.] 104(a) whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.

*Daubert*, 509 U.S. at 592–93, 113 S. Ct. 2786 (internal citations omitted). The Supreme Court provided a list of four factors for a trial court to consider when making this determination, but emphasized that "we do not presume to set out a definitive checklist or test." *Id.* at 593, 113 S. Ct. 2786. The four factors include: (1) whether the theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error in the case of a particular scientific technique; and (4) whether the theory or technique is generally accepted within the relevant scientific community. *Id.*; *see*

*generally Zuchowicz v. Untied States*, 140 F.3d 381 (2d Cir. 1998); *Iacobelli Constr., Inc. v. Cty. of Monroe*, 32 F.3d 19 (2d Cir. 1994). These factors are not considered exhaustive and the Supreme Court noted that Courts may consider other relevant factors. *Daubert*, 509 U.S. at 593, 113 S. Ct. 2786.

Those other factors include: (1) whether the proposed expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field," *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999); (2) whether the expert's field lacks reliability, *id.* at 151, 119 S. Ct. 1167; (3) whether the testimony comes from research conducted independent of litigation, *see Daubert v. Merrell Dow Pharm.*, 43 F.3d 1311, 1317 (9th Cir. 1995); (4) whether the proposed expert has considered additional explanations in his analysis, *see Ambrosini v. Labarraque*, 101 F.3d 129, 140 (D.C. Cir. 1996); and (5) the "non-judicial uses to which the scientific technique are put." *United States v. Downing*, 753 F.3d 1224, 1239 (3d Cir. 1985).

While the four guidelines enunciated in *Daubert* "leave in place the 'gatekeeper' role of the trial judge in screening such evidence," *General Electric Company v. Joiner*, 522 U.S. 136, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997), the Second Circuit in *McCullock v. H.B. Fuller Company*, 61 F.3d 1038 (2d Cir. 1995) held that:

> [t]rial judges must exercise sound discretion as gatekeepers of expert testimony under *Daubert*. [The Appellant], however, would elevate them to the role of St. Peter at the gates of heaven, performing a searching inquiry into the depth of the expert witness's soul—separating the saved from the damned. Such an inquiry would inexorably lead to evaluating witness credibility and weight of evidence, the ageless role of the jury.

*Id.* at 1045.

In sum, the Federal Rules of Evidence, the Supreme Court's ruling in *Daubert*, and the further guidance from the Second Circuit require this Court, when making a decision as to

whether to admit expert testimony to: (1) determine whether the witness is qualified to testify as an expert by examining the witness's educational or experiential qualifications in the relevant field; and (2) using the non-exhaustive factors enunciated as guidelines, determine whether the proposed testimony will involve the relevant specialized knowledge that will assist the trier of fact to understand or to determine a fact in issue. While the focus of the Court's inquiry must remain on the methodology rather than the conclusions, the Court is not obligated to accept conclusions that do not flow from the facts and methodologies used. *Amorgianos*, 303 F.3d at 266 (internal citations omitted).

Following *Daubert*, it has become a well-accepted principle that FED. R. EVID. 702 is to be interpreted using a liberal standard of admissibility, which is a departure from the more restrictive *Frye* standards. *See Nimely v. City of New York*, 414 F.3d 381, 395 (2d Cir. 2005). However, despite a more permissive approach to expert testimony, the Court must first ensure that "any and all scientific (or other expert) testimony or other evidence admitted is not only relevant but reliable." *Daubert*, 509 U.S. at 589, 113 S. Ct. 2786.

Six years after *Daubert*, in *Kumho Tire Co.*, 526 U.S. at 152, 119 S. Ct. 1167, the Supreme Court clarified that, whether a witness's area of expertise was technical, scientific, or more generally "experience-based," FED. R. EVID. 702 required the district court to fulfill the "gatekeeping" function of "mak[ing] certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.*

Also, as stated above, the requirement of "reliability" is extremely important and requires a clear analytical connection between the expert's methodology and his conclusions. So that *Daubert* and FED. R. EVID. 702 "mandate the exclusion of . . . unreliable opinion testimony."

*Amorgianos*, 303 F.3d at 266. The Supreme Court assigned to the trial judge the task of ensuring that an expert's testimony rests upon a reliable foundation and is relevant to the issues in the case. The trial judge has latitude in deciding how to test an expert's reliability and whether the expert's relevant testimony is reliable.

### 2. Application to the Facts of This Case

The Defendant asks the Court to preclude the Plaintiff from using Birnbach as a witness and from relying on his report, because (a) he is unqualified to offer opinion evidence; (b) his opinions are unreliable; and (c) his opinions will not assist the trier of fact. ECF 62-26 at 16–25. In opposition, the Plaintiff asserts that the Defendant is rearguing his positions that Judge Locke already ruled on in his R&R, and that this Court has since adopted. ECF 65 at 16–25. In reply, the Defendant alleges that the R&R avoided ruling on whether Birnbach was qualified to render opinions concerning the specific cause of the Plaintiff's injuries, and thus, that issue is properly before the Court. ECF 71-1 at 5. It further alleges that there is no basis to Birnbach's opinion that the Defendant should have placed warning signs on the base deck, and that Birnbach fails to demonstrate any violations of OSHA standards or of the Plan-O-Grams, and that the Court must preclude his conclusions as to what caused the Plaintiff's injury.

As an initial matter, the Plaintiff correctly argues that the R&R adopted by this Court already addressed most, though not all, of the issues with regard to Birnbach. Thus, those issues are barred by the law of the case doctrine. "The law of the case doctrine commands that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages of the same case unless cogent and compelling reasons militate otherwise." *Hernandez v. Sessions*, 731 F. App'x 51, 55 (2d Cir. 2018) (summary order) (quoting *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009)). Compelling reasons include "an intervening change in

law, availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Johnson*, 564 F.3d at 99–100 (internal quotation marks omitted); *see Sheet Metal, Air, Rail and Transp. Workers Local Union No. 137 v. Frank Torrone & Sons, Inc.*, No. 15-CV-2224, 2018 WL 4771897, at *6 (E.D.N.Y. Oct. 3, 2018).

Here, the Court adopted an R&R ruling that Birnbach was qualified to testify as an expert on matters of retail safety and design; that he was reliable, except for the extent that he offered conclusions of law; and that his assertions of fact based on his experience in the retail design and safety injury would be useful to a jury. The Court rules that none of the "cogent and compelling reasons" for disregarding the law of the case doctrine are present here. In addition, the Court notes that in its reply, the Defendant appears to have narrowed the scope of its motion with regard to Birnbach by asking that the court preclude Birnbach's conclusions of law, including what caused the Plaintiff to trip and fall. Accordingly, the Court now considers whether Birnbach is qualified to give an opinion concerning what caused the Plaintiff's injury.

The Second Circuit has ruled that "because a witness qualifies as an expert with respect to certain matters or areas of knowledge, it by no means follows that he or she is qualified to express expert opinions as to other fields." *Nimely v. City of New York*, 414 F.3d 381, 399 n.13 (2d Cir. 2005). In the context of biomechanical engineers, the Southern District of New York has ruled that "biomechanical engineers are not qualified to testify 'as to whether [an] accident caused or contributed to any of plaintiff's injuries,' as this would amount to a medical opinion." *Rodriguez v. Athenium House Corp.*, No. 11-Civ-5534, 2013 WL 796321, at *4 (S.D.N.Y. Mar. 5, 2013) (quoting *Morgan v. Girgis*, No. 07-CIV-1960, 2008 WL 2115250, at *6 (S.D.N.Y. May 16, 2008)). A court in this district has ruled that a medical doctor was not qualified to testify as to whether a specific medicine caused a Plaintiff's injury, because she had never prescribed that

medicine, and there was "no indication that she ha[d] any expertise, training, or experience that would qualify her to testify." *N.K. by Bruestle-Kumra v. Abbott Labs.*, No. 14-CV-4875, 2017 WL 2241507, at *3 (E.D.N.Y. May 22, 2017) (Reyes, M.J.); *see Davids v. Novartis Pharms. Corp.*, 857 F. Supp. 2d 267, 277 (E.D.N.Y. 2012).

Here, the Court agrees with the Defendant and rules that Birnbach may not testify as to what specifically caused the Plaintiff's injury. He has no medical training, and his expertise in retail does not give him the necessary background for commenting on specific causation. *See Pierre v. Hilton Rose Hall Resort & Spa*, No. 14-Civ-3790, 2016 WL 1228604, at *4 (E.D.N.Y. Mar. 28, 2016) ("[W]hile Mr. Diamond may be entirely qualified to offer testimony on whether a particular pool or water slide was built according to predetermined specifications . . . he is not qualified to opine on whether the  . . . alleged failure to abide by the applicable safety standards caused Plaintiff's injuries."). Birnbach further admitted in a deposition that he lacks biomechanical training, and, even if he had such training, it still would not be sufficient to qualify him to testify as to the specific cause of the Plaintiff's injury. *See Thomas v. YRC, Inc.*, No. 16-Civ-6105, 2018 WL 919998, at *5 (Pitman, *M.J.*); *see also Manlapig v. Jupiter*, No. 14-Civ-235, 2016 WL 916425, at *3 (S.D.N.Y. Mar. 10, 2016).

Thus, the Court declines to consider Birnbach's opinion as to what specifically caused the Plaintiff's injury. Also, pursuant to the R&R, it does not rely on Birnbach's conclusions of law. However, it does take into consideration the remaining assertions from his report and deposition testimony.

## C. As to the Plaintiff's Negligence Claim

### 1. Legal Standard

Here, the Plaintiff alleges a negligence claim based on the presence of a dangerous condition. It is well-established that "[t]he elements of a *prima facie* negligence claim in New York are: the existence of a duty of care owed to the plaintiff, a breach of that duty, such that the breach proximately caused the plaintiff's injuries." *In re Facebook, Inc.*, *IPO Sec. & Derivative Litig.*, 922 F. Supp. 2d 475, 481 n.3 (S.D.N.Y. 2013); *see also Nassau Cty. Bridge Auth. v. Olsen*, 130 F. Supp.3d 753, 757 (E.D.N.Y. 2015) (Spatt, *J.*). Further, "in a 'slip and fall' action, the plaintiff must show that the defendants 'created the condition which caused the accident, or that the defendants had actual or constructive notice of the condition.'" *Winston v. Marriott Int'l, Inc.*, No. 03-CV-6321, 2006 WL 1229111 (E.D.N.Y. May 8, 2006) (quoting *Quarles v. Columbia Sussex Corp.*, 997 F. Supp. 327, 330 (E.D.N.Y. 1998)).

A finding that a defendant created a dangerous condition "requires 'some affirmative act' on the part of the defendant." *Feder v. Target Stores*, 15 F. Supp. 3d 253, 256 (E.D.N.Y. 2014) (quoting *Gonzalez v. Wal-Mart Stores, Inc.*, 299 F. Supp. 2d 188, 192 (S.D.N.Y. 2004)). Evidence that a defendant merely permitted the existence of a dangerous condition is insufficient to demonstrate that the defendant created the hazardous condition. *Stepton-Howard v. Rite Aid Corp.*, No. 16-CV-1352, 2017 WL 3017191, at *3 (E.D.N.Y. June 13, 2017); *see also Taylor v. Manheim Mktg. Inc.*, No. 15-cv-1950, 2017 WL 5905544, at *3 (E.D.N.Y. Nov. 30, 2017) (citing *Stepton-Howard*). Though a plaintiff may not preclude summary judgment on the dangerous condition issue on the bases of speculation and conjecture, "circumstantial evidence may be sufficient if it supports an inference of causation and negligence." *Feder*, 15 F. Supp. 3d at 256 (citing *Krichevskaya v. City of New York*, 30 A.D.3d 471, 72, 817 N.Y.S.2d 103 (2d Dep't

2006); *Olsen v. K Mart Corp.*, No. 04-CV-3648, 2005 WL 2989546, at *11–12 (E.D.N.Y. Nov. 8, 2005) (Azrack, M.J.)).

"'While a landowner who holds property open to the public has a general duty to maintain the property in a reasonably safe condition to prevent foreseeable injuries, this duty extends only to conditions that are not readily observable.'" *Saltz v. Wal-Mart Stores, Inc.*, 510 F. App'x 68, 69 (2d Cir. 2013) (Summary Order) (quoting *Russell v. Archer Bldg. Ctrs. Inc.*, 219 A.D.2d 772, 631 N.Y.S.2d 102, 103 (3d Dep't 1995)). Thus, "a court is not precluded from granting summary judgment where a condition was both open and obvious and not inherently dangerous." *Niles v. 1109-1113 Manhattan Ave. Partners, LLC*, No. 13-CV-5427, 2015 WL 6674833, at *4 (E.D.N.Y. Oct. 30, 2015). The question of whether a hazard is latent or open and obvious "is generally fact-specific and thus usually a jury question." *Saltz*, 510 F. App'x at 69 (internal citations omitted). However, a Court "may determine that a risk was open and obvious as a matter of law when the established facts compel that conclusion, and may do so on the basis of clear and undisputed evidence." *Id.* (same). Courts deem a risk to be open and obvious when they are "readily observable by those employing the reasonable use of their senses." *Matteo v. Kohls Dep't Stores, Inc.*, 533 F. App'x 1, 2 (2d Cir. 2013) (summary order) (internal quotation marks omitted).

The extent to which one can distinguish a condition from its surroundings bears on whether the condition is in fact, open and obvious. *Rodriguez v. British Airways PLC*, No. 17-CV-3691, 2017 WL 6372733, at *5 (E.D.N.Y. Dec. 12, 2017) (citing *Glassberg v. Staples the Office Superstore E., Inc.*, No. 08-CV-2132, 2010 WL 3924682, *1 (Azrack, *M.J.*)). In addition, "a plaintiff's actual observation of an open and obvious condition is immaterial; the crucial inquiry is if the plaintiff *could* have seen it." *Rodriguez*, 2017 WL 6372733, at *5; *see Matteo v.*

*Kohl's Dep't Stores, Inc.*, No. 09-Civ-7830, 2012 WL 760317, at *8 (S.D.N.Y. Mar. 6, 2012) ("Plaintiff['s] failure to see and appreciate the full scope and dimensions of the display rack, particularly the outturned caster wheel, does not raise a material question of fact as to whether the condition was open and obvious. Put simply, the wheel was visible, and Plaintiff saw the display rack and had ample room to maneuver around it.").

Conversely, "the open and obvious nature of a dangerous condition on its property does not relieve a landowner from a duty of care where harm from an open and obvious hazard is readily foreseeable by the landowner and the landowner has reason to know that the visitor might not expect or be distracted from observing the hazard." *Michalski v. Home Depot, Inc.*, 225 F.3d 113, 121 (2d Cir. 2000). Thus, landowners still owe a duty of care in the event of an open and obvious hazard if (1) "customers would not expect to find the dangerous condition where it is," and (2) "defendant's displays of merchandise—particularly the displays above eye-level—would foreseeably distract the plaintiff to such an extent that she could not reasonably have been expected to observe the condition." *Id.* at 120–21.

An object or condition is inherently dangerous when "it requires special precautions at all times to avoid injury." *Joshi v. Walmart, Inc.*, No. 14-Civ-248, 2016 WL 11472115, at *5 (E.D.N.Y. Aug. 16, 2016) (internal quotation marks omitted). Although the inquiry generally is a matter for the jury, "a court may conclude that no issue of fact has been presented after examining the width, depth, elevation, irregularity and appearance of the defect along with the time, place, and circumstance of the injury." *Niles*, 2015 WL 6674833, at *4 (internal quotation marks omitted).

### 2. Application to the Facts of This Case

The Defendant raises several arguments as to the negligence claim.  First, it contends that the Plaintiff cannot make out a *prima facie* case that the base deck constituted a dangerous condition, because the Plaintiff failed to establish any condition or defect within the base deck itself that caused her to trip.  ECF 62-26 at 2–5.  They argue that the base deck is not dangerous because: (a) there are sufficient visual cues, such as the different colors of the base deck's side wall and the floor tiles; (b) nothing obstructed the Plaintiff's view of the base deck; (c) despite the Plaintiff's deposition testimony that the vertical portion of the base deck caused her to fall, she provides no evidence that this part of the base deck was loose, damaged, improperly designed, or that it protruded into the aisle; and (d) the Plaintiff fell because of her own inattentiveness, which, standing alone, does not establish a dangerous condition.  *Id.*

Second, the Defendant asserts that the Plaintiff's inattention to her surroundings was the sole proximate cause for her accident.  *Id.* at 5–6.  Third, it alleges that even if the base deck constituted a defect, it was open, obvious, and not inherently dangerous; thus, the Defendant had no duty to warn or protect against it.  *Id.* at 6–9.  Fourth, it argues that the Plaintiff cannot establish a *prima facie* case that the Defendant created the condition or had actual or constructive notice of it.  *Id.* at 9–13.  Fifth, the Defendant contends that the Plaintiff fails to make a *prima facie* case that her accident was possible, given that she somehow traversed a six-foot aisle by taking a single step back.  *Id.* at 13–15.

In opposition, the Plaintiff argues that the Defendant constructed the base deck, and thus had both active and constructive notice of it.  ECF 65 at 8–9.  The Plaintiff also claims that the aisles near the base deck were too narrow to allow for two shopping carts to pass at the same time.  *Id.* at 9.  She claims that the presence of the base deck in the infants' department

18

controverted the standards set out in the Plan-O-Grams and that it also did not comply with OSHA standards. *Id.* at 9–10. She claims that it was the "open void/space" between pieces of furniture on the base deck which caused her to fall and fall between the pieces of furniture, and that she was distracted by the shelves that she was looking at when she stepped back. *Id.* at 12–13. She asserts that the Defendant knew that customers would be likely to step onto or walk across the base deck in the infants' department, yet the Defendant neither warned customers to watch their step nor prohibited them from walking on the base deck. *Id.* at 11–12. The Plaintiff also argues that based on the deposition testimony of the Defendant's employees, the Plaintiff's expert Birnbach's testimony, and photographic evidence of the base deck, generate questions of fact to be resolved by a jury. *Id.* at 19.

The Defendant in reply reiterates its argument that "there is no evidence that the mere existence of the base deck being in and of itself is a dangerous condition." ECF 71-1 at 1. It further argues that the Plaintiff raises inconsistent arguments as to what exactly constituted the dangerous condition: the base deck itself; the void between the pieces of furniture on the base deck; or the shelves on either side of the base deck. *Id.* at 2.

The Court grants the motion for summary judgment as to the negligence claim. As an initial matter, the Defendant, a retail store, owed the Plaintiff "the duty to act 'as a reasonable [entity] in maintaining [its] property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk.'" *Alfaro v. Wal-Mart Stores, Inc.*, 210 F.3d 111, 115 (2d Cir. 2000); *see Stepton-Howard*, 2017 WL 3017191, at *3 ("It is well settled, and Defendant does not dispute, that as a store open to the public, Rite Aid had a duty to maintain its premises in a

reasonably safe condition.") (internal quotation marks omitted); *Browne v. Marriott Int'l Hotels, Inc.*, No. 07-CV-2228, 2010 WL 3602844, at *3 (E.D.N.Y. Sept. 7, 2010).

As to whether the base deck constituted a dangerous condition, such a question "is generally a question of fact for the jury." *Soto v. GMRI, Inc.*, No. 11-CV-3187, 2013 WL 3208271, at *4 (E.D.N.Y. June 24, 2013) (collecting cases) (internal quotation marks omitted); *Fasano v. Green-Wood Cemetery*, 21 A.D.3d 446, 799 N.Y.S.2d 827, 828 (2d Dep't 2005) (reasoning that a triable issue of fact existed as to whether "the condition upon which the plaintiff tripped and fell, a difference in elevation between the landing of a concrete staircase and the adjoining walkway, which ranged up to two inches for a length of approximately two feet, was trivial."). However, for the reasons that follow, the Court rules as a matter of law that the base deck was open and obvious, and not inherently dangerous, because it "could not be overlooked by any observer reasonably using his or her ordinary senses." *Niles*, 2015 WL 6674833, at *2 (internal quotation marks omitted); *Sauro v. Costco Wholesale Corp.*, No. 18-CV-2091, 2019 WL 3046852, at *7 (E.D.N.Y. May 29, 2019) (Tomlinson, *M.J.*), *adopted by*, 2019 WL 307069 (E.D.N.Y. Jul. 10, 2019).

Here, the Defendant's Rule 56.1 statement, as well as photographic evidence, sworn statements, and deposition testimony, reveal that the base deck was open and obvious and not inherently dangerous, in that it was distinguishable from the surrounding light-colored floor in both its height and color, in that it is nine inches high, contains white striping on the top, and dark carpeting on the side. *See Chaney v. Starbucks Corp.*, 115 F. Supp. 3d 380, 387 (S.D.N.Y. 2015) (ruling that a "white charger square offset against [a] store's orange-colored floor, was open and obvious.") (internal quotation marks omitted); *Rodriguez*, 2017 WL 6372733, at *6 ("Furthermore, the top surface of the lip of the entrance was chrome, as opposed to the dark

coloring of the floors of both the jet bridge and the aircraft."); *Glassberg*, 2010 WL 3924682, at *1 ("Both the handle and the platform were *silver* in color, and the platform's wheels elevated it a few inches off of the store's *black*, carpeted floor."); *see also* ECF 62-19 at 23–24, 62-20. The Plaintiff also testified as to noticing the distinct color of the base deck after she fell. *See Rodriguez*, 2017 WL 6372733, at *5 (noting that the relevant inquiry is whether the injured party could have seen an object, and not whether the party actually saw it).

The above-listed evidence also establishes that the base deck did not protrude into the aisle, which cuts against a finding that the condition was not open and obvious. *See Sauro*, 2019 WL 3046852, at *8 (citing *Schwartz v. Kings Third Ave. Pharmacy, Inc.*, 116 A.D.3d 474 (1st Dep't 2004)). Further, the Plaintiff testified that nothing obstructed her view of the aisle. ECF 62-17 at 29–30. Accordingly, the Defendant would have no reason to know that the Plaintiff would not expect to see the base deck, or be distracted from it. *See Michalski*, 225 F.3d at 121. The Plaintiff was also not distracted by merchandise above her eye line, because she had been inspecting an item that caused her to lean over, before picking up the item and ultimately stepping back. *Id.*; *see* ECF 62-17 at 35–36. The Court also notes that while Birnbach recommended that the Defendant should have placed signs on the base deck warning parties not to walk on it, such a sign would not have been useful here, as the Plaintiff had her back to the base deck before allegedly colliding with it. ECF 62-17 at 35–36.

Because the base deck is both open and obvious and not inherently dangerous, the Court need not reach the issues of whether the Defendant had actual or constructive notice of an inherently dangerous condition, or whether the Plaintiff was the sole proximate cause of her injury. *See Sauro*, 2019 WL 3046852, at *11.

### D. As to the Plaintiff's Negligent Hiring Claim

#### 1. Legal Standard

"'Generally, where an employee is acting within the scope of his or her employment, the employer is liable for the employee's negligence under a theory of respondeat superior and no claim may proceed against the employer for negligent hiring, retention, supervision or training.'" *Martinez v. Cty. of Suffolk*, 999 F. Supp. 2d 424, 433 (E.D.N.Y. 2014) (Spatt, *J.*) (quoting *Talavera v. Arbit*, 18 A.D.3d 738, 795 N.Y.S.2d 708 (2d Dep't 2005). "'This is because if the employee was not negligent, there is no basis for imposing liability on the employer, and if the employee was negligent, the employer must pay the judgment regardless of the reasonableness of the hiring or the adequacy of the training." *Id.* (quoting *Karoon v. New York City Transit Auth.*, 241 A.D.2d 323, 324, 659 N.Y.S.2d 27, 29 (1st Dep't 1997).

Under New York law, a claim for negligent hiring, supervision or retention, "in addition to the standard elements of negligence," requires "a plaintiff [to] show: (1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer 'knew or should have known of the employee's propensity which caused the injury' prior to the injury's occurrence; and, (3) that the tort was omitted on the employer's premises or with the employer's chattels." *Ehrens v. Lutheran Church*. 385 F.3d 232, 235 (2d Cir. 2004) (quoting *Kenneth R. v. Roman Catholic Diocese of Brooklyn*, 229 A.D.2d 159, 161, 654 N.Y.S.2d 791 (2d Dep't 1997)).

#### 2. Application to the Facts of This Case

The Defendant contends that because the Plaintiff fails to identify a single employee who caused the allege defect, she cannot make out a *prima facie* case for negligent hiring. ECF 62-26 at 15–16. The Plaintiff makes no allegations in its opposition as to the negligent hiring claim, and, in reply, the Defendant notes the Plaintiff's failure to oppose. ECF 71-1 at 5.

The Court grants the summary judgment motion as to the negligent hiring claim. The failure to oppose a motion for summary judgment, standing alone, does not merit the granting of summary judgment, and a district court "must still assess whether the moving party has fulfilled its burden of demonstrating that there is no genuine issue of material fact." *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (per curiam).

As noted by the Defendant in its summary judgment motion, the Plaintiff fails to make out a *prima facie* case of negligent hiring because she does not identify a single employee of the Defendant who participated in the events leading to the Plaintiff's injury. *See Corbett v. City of New York*, No. 11-CV-3549, 2013 WL 5366397, at *23 (E.D.N.Y. Sept. 24, 2013) ("Here, a cause of action based upon negligent hiring, retention or supervision cannot be maintained because there are no New York Police officers who remain in the case or who were identified.").

## III.     CONCLUSION

For the foregoing reasons, the Court grants the Defendant's Rule 56 motion for summary judgment in its entirety, and the action is dismissed. The Clerk of the Court is respectfully directed to close this case.

It is **SO ORDERED.**

_____/s/ Artur D. Spatt_____                     ____January 2, 2019____

Arthur D. Spatt, U.S.D.J.                                          Date